In the Matter of RICHARD J. RUBIN (Admitted as RICHARD JEFFREY RUBIN), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, August 3, 1989

## APPEARANCES OF COUNSEL

*Hal R. Lieberman* for petitioner.

*Robert W. Cinque* of counsel *(Cinque & Cinque, P. C.,* attorney), for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent, Richard J. Rubin was admitted to practice as

an attorney and counselor-at-law by the Appellate Division, First Department, on May 8, 1968. At all relevant times, he maintained an office for the practice of law within the First Department.

These charges arise from an incident which occurred while respondent was employed as an associate at the law firm of Bell, Kalnick, Beckman, Klee, & Green. Respondent was recommended to a Colorado law firm as an expert in securities law and, because of respondent's association with the firm, Bell, Kalnick was retained by the Colorado firm to perform local legal services in connection with certain depositions of bank officers in a securities matter. All work on the matter was handled solely by respondent and, upon completion of the requested legal services, he prepared and sent a bill, on Bell, Kalnick's letterhead, to the Colorado firm in the amount of $2,875. The Colorado firm paid the amount in full by forwarding a check payable to respondent although there is no evidence that respondent ever requested that the check be made payable to him rather than to Bell, Kalnick. Nevertheless, respondent deposited the check in his personal bank account.

After a hearing, the Hearing Panel of the Departmental Disciplinary Committee sustained the charge of converting the fee payment but found that there were significant and substantial mitigating factors present and recommended that respondent be punished by a public censure.

To fully evaluate respondent's actions, it is important to review his background and the facts relative to his association with the Bell, Kalnick firm. Respondent began his legal career in 1969 with the Securities and Exchange Commission where he served for 6½ years, rising to the rank of assistant branch chief. Thereafter, he practiced law as an associate with a New York City law firm for five years, where at the time he left, in 1981, he was earning $54,000 per year.

In 1981, respondent became associated with Bell, Kalnick. Respondent's family were long-time friends of a senior partner in that firm, who respondent also knew prior to their professional relationship. Respondent accepted Bell, Kalnick's employment offer because of this family relationship and in reliance upon the firm's representation, in extensive discussions, that the firm was young and growing with expectations of an increasing amount of corporate work and public offerings which would utilize respondent's expertise. He was as-

sured that although he was hired at a salary that represented a $9,000 pay cut, a Christmas bonus and future compensation would be substantial and more than make up the differential.

Once respondent began working for the firm, difficulties arose. The anticipated public offerings and other SEC work did not materialize. Respondent was not given his own secretary, and was assigned work not consistent with his level of expertise, such as organizing minute books, which he felt was demeaning to someone with his years of experience. Conversely, respondent performed poorly in those assignments, resulting in the firm's disappointment with him. Respondent was not given his promised Christmas bonus, and by the spring of 1982, respondent was asked to find other employment. He eventually left the firm in June or early July of 1982. The fee from the Colorado firm, which had been generated solely through respondent's own efforts, was received in May 1982 at about the time when respondent had been asked to leave. It may be noted that the firm itself did not initially move with dispatch to confront respondent or to take action to recover the money, and that respondent ultimately did make repayment.

In considering the penalty recommended by the panel, it is significant that respondent's misconduct did not involve any funds belonging to a client. In light of the other mitigating factors, the penalty of public censure recommended by the Hearing Panel appears appropriate for this respondent, who has an otherwise unblemished record and expresses remorse over the incident. There is nothing in this record to indicate that permitting respondent to continue to practice law will pose any danger to his clients or to the public interest.

Accordingly, we confirm the report of the Hearing Panel and respondent is publicly censured.

ASCH, J. P., MILONAS, KASSAL, ROSENBERGER and ELLERIN, JJ., concur.

Petition granted and respondent publicly censured.